**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALLEN W. FLATH, JR.; MARY C.
FLATH,
Plaintiffs-Appellees,

v.

BOMBARDIER, INCORPORATED;
BOMBARDIER RECREATIONAL
PRODUCTS; BOMBARDIER MOTOR                                    No. 99-2519
CORPORATION OF AMERICA,
Defendants-Appellants,

and

J. GRADY MILLER, JR., d/b/a Grady
Miller's,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-98-3205-6-20)

Argued: June 5, 2000

Decided: July 10, 2000

Before MURNAGHAN, WILLIAMS, and TRAXLER,
Circuit Judges.

_____


Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Michael Collins, BUIST, MOORE, SMYTHE & MCGEE, P.A., Charleston, South Carolina, for Appellants. Stanley Lippincott White, WHITE & WHITE LAW OFFICES, P.L.L.C., Brighton, Michigan; Justin S. Kahn, KAHN LAW FIRM, Charleston, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this appeal, we are asked to review the district court's grant of a motion for voluntary dismissal made pursuant to Federal Rule of Civil Procedure 41(a)(2). Because we are confident that the district court did not abuse its discretion, we affirm its order granting Appellees' Rule 41(a)(2) motion.

I.

On July 15, 1997, Allen Flath was seriously injured in a jet-ski accident that occurred on Lake Murray in Lexington County, South Carolina. On November 2, 1998, Mr. Flath and his wife, Dr. Mary Flath (collectively, the Flaths or Appellees), filed suit in the United States District Court for the District of South Carolina against Bombardier, Inc., two Bombardier subsidiaries, and J. Grady Miller, Jr. d/b/a Grady Miller's (collectively, Defendants). The Flaths alleged negligence and strict-liability causes of action in their complaint and indicated that their suit was initiated in federal court on the basis of federal admiralty jurisdiction within the meaning of Federal Rule of Civil Procedure 9(h). In their complaint, the Flaths alleged that Lake Murray was a "navigable waterway."

2

Defendants filed answers and the parties participated in pre-trial discovery. In early August 1999, the Flaths' counsel became concerned that Lake Murray might not be a "navigable waterway" and that federal admiralty jurisdiction might not exist. Recognizing that the statute of limitations for bringing the case in state court would expire in July 2000 and concerned that continuing to proceed in federal court might risk a future dismissal based upon lack of admiralty jurisdiction, the Flaths' counsel requested that opposing counsel consent to a voluntary motion to dismiss in order to avoid any jurisdictional problems. After opposing counsel refused to consent to the dismissal, the Flaths filed a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) on September 28, 1999.

On October 18, 1999, the district court granted the Flaths' motion for voluntary dismissal, concluding that granting the motion would not substantially prejudice Defendants. The district court noted that "much of [the] discovery [conducted to that point] may be used in state court." (J.A. at 78.) The district court also concluded that Lake Murray was not a navigable waterway for federal admiralty jurisdiction purposes after it took judicial notice of the fact that Lake Murray "is a dammed, lockless lake that is wholly contained within the state and incapable in its current configuration of supporting commercial shipping." (J.A. at 79-80.) The district court, therefore, also concluded that it was without jurisdiction over the case, which further supported granting the Rule 41 motion. On October 22, 1999, the Flaths filed a virtually identical suit in South Carolina state court. Bombardier, Inc., and its two subsidiaries (collectively, Appellants), now appeal from the district court's order granting the Flaths' motion for voluntary dismissal.[1]

II.

Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff voluntarily to dismiss an action upon receipt of court approval.[2] See Fed.

_____

[1] Grady Miller did not join the appeal.
[2] Federal Rule of Civil Procedure 41(a)(2) provides in relevant part: "(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed. R. Civ. P. 41(a)(2).

3

R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." S.A. Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). A district court's decision to grant a Rule 41(a)(2) motion "will ordinarily not be reversed except for an abuse of discretion." Davis, 819 F.2d at 1273.

In this case, the district court carefully considered four factors before determining that dismissal under Rule 41(a)(2) was appropriate. The district court first considered the "opposing party's effort and expense in preparing for trial." (J.A. at 78.) The district court noted that although Defendants had expended time and expense in discovery, "much of this discovery may be used in state court." (J.A. at 78.) Second, the district court considered whether the Flaths had excessively delayed bringing the motion or demonstrated a lack of diligence. The district court expressly found that the Flaths acted diligently in informing the district court and opposing counsel of their concerns about jurisdiction and that any delay was not excessive. Third, in considering whether the Flaths provided a sufficient explanation of the need for dismissal, the district court determined that the explanation that the court lacked subject matter jurisdiction also weighed in favor of granting the motion. In discussing the sufficiency of this explanation, the district court concluded that it did not possess subject matter jurisdiction over the case after it determined that Lake Murray was not a navigable waterway for federal admiralty jurisdiction purposes. Finally, the district court considered the present stage of the litigation and reasoned that although trial was scheduled to commence the following month, dismissal remained appropriate in light of the issue regarding subject matter jurisdiction.**3** After weighing these four factors, the district court granted the Flaths' motion for voluntary dismissal. Because we agree that the grant of the motion for dismissal did not substantially prejudice Appellants, we hold that the district court did not abuse its discretion and affirm its ruling.

_____

**3** There were no motions for summary judgment pending at the time of the Rule 41(a)(2) motion.

4

Appellants focus their argument on appeal on the purported impropriety of the district court's conclusion that Lake Murray was not a navigable waterway and its taking of judicial notice to establish the facts necessary to support that conclusion. Appellants do not provide any evidence to support the theory that Lake Murray is a navigable waterway; instead they attempt to rely upon past federal court cases involving Lake Murray and the Flaths' assertion in their complaint that Lake Murray was a navigable waterway. Appellants' claim that the Flaths are now "bound" by this judicial"admission." (Appellants' Br. at 8, 12.)

Courts may take judicial notice, in their discretion, of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. After a court takes judicial notice of a fact, a party may request an opportunity to be heard as to the propriety of the court's action, under Federal Rule of Evidence 201(e). In this case, the district court took judicial notice of the fact that Lake Murray "is a dammed, lockless lake that is wholly contained within the state and incapable in its current configuration of supporting commercial shipping." (J.A. at 79-80.) This fact concerns a lake that is within the territorial jurisdiction of the district court, and, moreover, is a fact capable of accurate and ready determination by resort to a map. In other words, it is the type of fact over which judicial notice may be properly exercised. After the district court exercised its discretion in taking judicial notice of this fact, Appellants never requested an opportunity to be heard on the matter, as Rule 201(e) expressly contemplates.

In Alford v. Appalachian Power Co., 951 F.2d 30 (4th Cir. 1991), we held that we did not possess admiralty jurisdiction over a claim that arose within the waters of Smith Mountain Lake in Virginia.[4] See id. at 34. As we explained:

_____

[4] Notably, the district court judge presiding over the present dispute between the Flaths and Appellants served by designation on the panel -- and joined in the majority opinion -- in Alford.

5

[N]avigable water for purposes of admiralty jurisdiction [is defined] as a body of water which, in its present configuration, constitutes a highway of commerce, alone or together with another body of water, between the states or with foreign countries over which commerce in its current mode is capable of being conducted.

. . .

Smith Mountain Lake is a dammed, lockless lake lying wholly within the State of Virginia. As a body of water by itself, it cannot act as a highway of commerce between two states or with foreign countries. Nor can it, because of its present configuration, become a part of such a highway by uniting with other waterways between the states or with foreign countries. Should the dam ever be taken down or destroyed and the Roanoke River once again restored as a navigable waterway between the states, then claims arising from accidents on the river at that time may once again be subject to admiralty jurisdiction.

Id. at 32-33. Based upon our opinion in Alford, it is clear to us that once the district court took judicial notice of the facts concerning Lake Murray's present configuration it properly concluded that the lake is not a navigable waterway for purposes of establishing federal admiralty jurisdiction.[5]

_____

[5] We reject Appellants' reliance upon Oliver by Oliver v. Hardesty, 745 F.2d 317 (4th Cir. 1984), and Onley v. South Carolina Elec. & Gas Co., 488 F.2d 758 (4th Cir. 1973), for their contention that Lake Murray is a navigable waterway. In Oliver by Oliver, this Court reviewed whether a boating accident that occurred on Lake Murray could support federal admiralty jurisdiction. We focused exclusively upon the question of whether an accident involving an injured plaintiff who had been swimming for pleasure bore a close enough relationship to traditional maritime activities to invoke admiralty jurisdiction. See Oliver by Oliver, 745 F.2d at 320. Although we concluded that admiralty jurisdiction was appropriate, we never considered the separate question of whether Lake Murray was a navigable waterway. In Onley, we denied jurisdiction over a dispute that arose on the waters of Lake Murray based upon our con-

6

Although we conclude that it was entirely appropriate for the district court to take judicial notice with respect to the present configuration of Lake Murray and to determine that it was without subject matter jurisdiction over the case, we emphasize that this ultimate determination was not essential to the appropriateness of its granting the motion for voluntary dismissal. The motion for dismissal was predicated upon Rule 41(a)(2), not upon Rule 12(b)(1) for lack of subject matter jurisdiction. In considering Rule 41(a)(2) motions, district courts often will be within their discretion to dismiss cases even when they have jurisdiction. Thus, the propriety of the district court's grant of the motion for voluntary dismissal does not turn upon the correctness of its supporting conclusion that it was without jurisdiction. Regardless of the correctness of that conclusion, the fact that jurisdiction might be a stumbling block that could surface some time

_____

clusion that the action did not bear a significant enough relationship to traditional maritime activities. See Onley, 488 F.2d at 760. Again, we never faced the question of whether Lake Murray was a navigable waterway. Contrary to Appellants' contention, therefore, these cases do not establish that Lake Murray is a navigable waterway.

We also reject Appellants' contention that the Flaths are bound by their "judicial admission" that Lake Murray is a navigable waterway. See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); 13 Charles Alan Wright et al., Federal Practice & Procedure§ 3522, at 66-67 (1984) ("[P]arties cannot waive lack of subject matter jurisdiction by express consent, or by conduct, or even by estoppel . . . ."). Whether a body of water is a navigable waterway for purposes of creating federal admiralty jurisdiction is a legal conclusion. Parties may not create jurisdiction by alleging the very legal conclusion upon which our jurisdiction would be based; they can only demonstrate that our jurisdiction is appropriate by alleging the facts that would support that legal conclusion. See id. at 63 ("[T]he facts showing the existence of jurisdiction must be affirmatively alleged in the complaint."). Significantly, the Flaths did not allege in their complaint that Lake Murray is a body of water which, in its present configuration, is capable of supporting commercial activity between states or with foreign countries. See Alford v. Appalachian Power Co., 951 F.2d 30, 32 (4th Cir. 1991) (defining the term"navigable waterway" for purposes of federal admiralty jurisdiction).

in the future would justify the grant of a motion for voluntary dismissal in the absence of substantial prejudice to Defendants. We, therefore, need only determine whether the district court's determination that granting the motion for voluntary dismissal did not substantially prejudice Defendants constituted an abuse of discretion.

As the district court noted, the parties had engaged in a considerable amount of discovery, although apparently not all had been completed. Appellants contend that because they had expended the time and expense related to this pre-trial process, the dismissal served to prejudice them.[6] We disagree. It is unclear from the record just what discovery still needed to be completed, but we are confident that the discovery that had taken place at the time of dismissal was not performed for naught. Within days of the district court's order dismissing this case, the Flaths initiated a virtually identical suit in state court in South Carolina. As the district court noted, much, if not all, of the discovery performed during the course of the federal phase of the case may be used in state court. We do not believe that the Rule 41(a)(2) dismissal substantially prejudiced Appellants, and we are satisfied that the district court did not abuse its discretion.[7]

_____

[6] At oral argument, the parties disputed the extent to which each had complied with various discovery requirements, the causes for previous delays in providing discovery materials, and which party, if any, received a tactical advantage by virtue of the dismissal. The record before us is unclear on these matters. The district court was in the best position to resolve these various disputes and we accord it considerable deference. The district court's thorough consideration of the Flaths' motion for voluntary dismissal and its decision to grant that motion informs us that it concluded that dismissal remained appropriate despite these contentions.

[7] Appellants also argue that even if the Rule 41(a)(2) dismissal was not improper, the district court should have imposed conditions restricting discovery in state court. Rule 41(a)(2) authorizes courts to impose conditions it deems proper, but does not require such conditions. See Fed. R. Civ. P. 41(a)(2). Notably, Appellants never asked the district court to impose any terms or conditions on its dismissal. In light of Appellants' failure to request that any specific conditions be placed upon the dismissal, we cannot say that the district court abused its discretion in unconditionally dismissing the case.

8

III.

For the foregoing reasons, we affirm.

<u>AFFIRMED</u>